MITCHELL SILBERBERG & KNUPP LLP
DAVID A. STEINBERG (SBN 130593)
    das@msk.com
BRADLEY J. MULLINS (SBN 274219)
    bym@msk.com
ANDREW NIETES (SBN 333998)
    afn@msk.com
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for UMG Recordings, Inc.; Capitol
Records, LLC; Universal Music Corp.; PolyGram
Publishing, Inc.; Songs of Universal, Inc.; Universal
Music – MGB NA LLC; Universal Music – Z Tunes
LLC; Universal Music Publishing, Inc.; Concord
Music Group, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UMG Recordings, Inc.; Capitol Records, LLC; Universal Music Corp.; PolyGram Publishing, Inc.; Songs of Universal, Inc.; Universal Music – MGB NA LLC; Universal Music – Z Tunes LLC; Universal Music Publishing, Inc.; Concord Music Group, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Last Brand, Inc. d/b/a Quince and Does 1 through 10, <br><br> Defendants. | CASE NO. 3:26-cv-03244 <br><br> **COMPLAINT** <br><br> **Demand for Jury Trial** |

Mitchell
Silberberg &
Knupp LLP

**COMPLAINT**

Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Polygram Publishing, Inc., Songs of Universal, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes LLC, Universal Music Publishing, Inc., and Concord Music Group, Inc. (collectively, "Plaintiffs"), by their undersigned attorneys, for their Complaint against Last Brand, Inc. d/b/a Quince ("Quince") and Does 1 through 10 (together with Quince, "Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1.     Plaintiffs are some of the world's leading record labels and music publishers. They are in the business of acquiring, administering, licensing, and otherwise exploiting catalogs of copyrights in and to sound recordings and musical compositions. Plaintiffs' catalogs of copyrighted sound recordings and musical compositions are extremely valuable and encompass works composed or famously performed by a wide array of legendary songwriters and artists, including ABBA, Ariana Grande, Diana Ross, Maroon 5, and Playboi Carti.

2.     Quince is a start-up fashion company founded in 2018 that has built notoriety and prominence primarily through its heavy advertising on social media platforms including TikTok and Instagram. In addition to promoting their products through their own accounts, Quince also engages in paid partnerships – *hundreds per month* – with popular social media influencers and creators. These influencers and creators generally consist of persons with significant social media followings, whom many brands partner with hoping to capitalize on the individuals' personality, reputation, and credibility to influence consumers' purchasing decisions and/or brand awareness. Due to the resonance of popular music with consumers, Quince and its social media influencers have, without authorization, used many of Plaintiffs' most valuable musical compositions and sound recordings in marketing

Mitchell
Silberberg &
Knupp LLP

2

**COMPLAINT**

and advertising videos for Quince's products.[1] Quince distributes these videos (the "Infringing Videos") to the public via its own accounts on a variety of social media platforms, as well as through its influencer partners. The Infringing Videos are a key aspect of Quince's promotional, marketing, and branding strategy. Indeed, Quince attributes its exponential growth over the last few years specifically to its presence on social media.

3.      Quince surely is aware that its conduct constitutes copyright infringement, given that it is a sophisticated, multi-billion dollar global operation. Moreover, Quince was notified that it was infringing Plaintiffs' copyrighted works over a year ago. Nevertheless, Quince continues to infringe. Quince's infringement is therefore willful and deliberate.

4.      Quince's conduct has caused and continues to cause substantial, manifest, and irreparable harm to Plaintiffs, while enriching Quince at Plaintiffs' expense and to the detriment of the copyrighted works owned and/or controlled by Plaintiffs. By this lawsuit, Plaintiffs seek to bring Quince's conduct to an end and to obtain compensation for the harm Quince has caused and continues to cause to Plaintiffs and the recording artists and songwriters whose works were used without compensation or consent.

### JURISDICTION AND VENUE

5.      This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

6.      This Court has jurisdiction over this action pursuant to 17 U.S.C. §§ 101 *et seq.*, 28 U.S.C. §§ 1331 and 1338.

7.      As further detailed below, this Court has personal jurisdiction over Quince because it has a principal place of business in this District and, among other

---

[1] Courts have regularly found this type of social media advertising creates liability for copyright infringement. *See UMG Recs., Inc. v. Vital Pharms., Inc.*, No. 21-CV-60914-CIV, 2022 WL 2670339 (S.D. Fla. July 11, 2022); *Sony Music Entm't v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858 (S.D. Fla. Sept. 14, 2022).

Mitchell Silberberg & Knupp LLP

3

**COMPLAINT**

things, Quince has engaged and is engaged in tortious conduct within the State of California and in this District, including by reproducing, distributing, preparing derivative works based upon, and publicly performing Plaintiffs' copyrighted works within the State of California. Additionally, among other things, (a) Quince has maintained a business presence in the State of California and is doing or has been doing business continuously in the State of California and this District, (b) a substantial part of the wrongful acts committed by Quince have occurred in interstate commerce, in the State of California, and in the Northern District of California, and (c) Quince's conduct causes injury to, and is directed at, Plaintiffs and their intellectual property within the State of California.

8.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c). Quince resides in this District and, upon information and belief, a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

9.     Plaintiff UMG Recordings, Inc. ("UMG Recordings") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business within the County of Los Angeles, California.

10.     Plaintiff Capitol Records, LLC ("Capitol") is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business within the County of Los Angeles, California.

11.     Plaintiff Concord Music Group, Inc. ("Concord") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business within Davidson County in Nashville, Tennessee.

12.     Plaintiffs UMG Recordings, Capitol, and Concord collectively are referred to herein as the "Record Company Plaintiffs."

13.     The Record Company Plaintiffs are engaged in the business of producing sound recordings and distributing, selling, and/or licensing the

Mitchell
Silberberg &
Knupp LLP

4

**COMPLAINT**

reproduction, distribution, sale, preparation of derivative works based upon, and performance by digital audio transmission of their sound recordings in phonorecords (as defined in 17 U.S.C. § 101), in audiovisual works, and for streaming (i.e., performing) and downloading over the Internet and through other mediums. The Record Company Plaintiffs invest substantial time, effort, and creative talent in discovering and developing recording artists, and in creating, advertising, promoting, selling, and licensing sound recordings embodying the performances of their exclusive recording artists and their unique and valuable sound recordings.

14.     The Record Company Plaintiffs own copyrights and/or exclusive rights in and to their sound recordings including many of the most popular sound recordings in the world, including by way of example, the works identified on Exhibit 1 hereto, incorporated herein by reference (the "Recordings"). The Record Company Plaintiffs have either obtained certificates of copyright registration in each of the Recordings identified on Exhibit 1 or the Recordings are exempt from the registration requirements of 17 U.S.C. § 411 under the terms of the Berne Convention. As the owner or exclusive licensee of copyrights in the Recordings, the Record Company Plaintiffs possess the exclusive rights, among other things, to reproduce the Recordings in copies or phonorecords, to prepare derivative works based upon the Recordings, to distribute copies or phonorecords of the Recordings to the public, to perform the Recordings publicly by means of a digital audio transmission and to license these exclusive rights, including over the Internet.

15.     Plaintiff Universal Music Corp. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business within the County of Los Angeles, California.

16.     Plaintiff PolyGram Publishing, Inc. is a Delaware corporation with its principal place of business within the County of Los Angeles, California.

17.     Plaintiff Songs of Universal, Inc. is a California corporation with its principal place of business within the County of Los Angeles, California.

Mitchell
Silberberg &
Knupp LLP

5

**COMPLAINT**

18.    Plaintiff Universal Music – MGB NA LLC is a California limited liability company with its principal place of business within the County of Los Angeles, California.

19.    Plaintiff Universal Music – Z Tunes LLC is a New York limited liability company with its principal place of business within the County of Los Angeles, California.

20.    Plaintiff Universal Music Publishing, Inc. is a California corporation with its principal place of business within the County of Los Angeles, California.

21.    Plaintiffs Universal Music Corp., PolyGram Publishing, Inc., Songs of Universal, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes LLC, and Universal Music Publishing, Inc. are referred to herein collectively as "Universal Music Publishing."

22.    Plaintiffs Universal Music Publishing and Concord collectively are referred to herein as the "Music Publisher Plaintiffs."

23.    The Music Publisher Plaintiffs are music publishers, engaged in the business of acquiring, owning, publishing, administering, licensing, and otherwise exploiting copyrights in musical compositions. Plaintiffs invest substantial time, effort, and creative talent to acquire, administer, publish, license, and otherwise exploit such copyrights, on their own behalf and on behalf of songwriters and other music publishers with whom they have contractual relationships.

24.    The Music Publisher Plaintiffs own or administer (in whole or in part) copyrights and/or exclusive rights in and to thousands of musical compositions, including by way of example those compositions identified on Exhibit 1 hereto, incorporated herein by reference (the "Musical Compositions"). The Music Publisher Plaintiffs have either obtained certificates of copyright registrations issued by the Copyright Office in each of the Musical Compositions identified Exhibit 1 or the Musical Compositions are exempt from the registration requirements of 17 U.S.C. § 411 under the terms of the Berne Convention. As the owners or

Mitchell
Silberberg &
Knupp LLP

6

**COMPLAINT**

administrators of copyrights (in whole or in part) in these Musical Compositions, the Music Publisher Plaintiffs possess the exclusive rights, among other things, to reproduce the Musical Compositions in copies or phonorecords, to prepare derivative works based upon the Musical Compositions, to distribute copies or phonorecords of the Musical Compositions to the public, and to perform the Musical Compositions publicly.

25.    Last Brand, Inc. d/b/a Quince is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business within the County of San Francisco, California.

26.    Upon information and belief, Defendants Does 1 through 10 are subsidiaries, affiliates, agents, franchisees or representatives of Quince, and/or are otherwise responsible for and proximately caused and are causing the harm and damages alleged in this Complaint. Plaintiffs presently are unaware of the true names and/or the involvement of the Defendants sued herein by the fictitious designations Does 1 through 10, and for that reason, sue them by those designations. Plaintiffs will seek leave to amend this Complaint to identify Does 1 through 10 when their true names and involvement in the infringements and other wrongful conduct hereinafter described are known.

**FACTS APPLICABLE TO ALL CLAIMS**

**Plaintiffs' Business**

27.    Pursuant to U.S. copyright law, Plaintiffs have the exclusive right over the sound recordings and musical compositions they own to, among other things, reproduce, distribute, and create derivative works of copyrighted works; to publicly perform musical compositions; and to digitally transmit sound recordings to the public. An important portion of Plaintiffs' return on their investment in sound recordings and musical compositions comes from licensing sound recordings and musical compositions to others who use Plaintiffs' works in videos, films, television shows, commercials, video games, and on social media.

Mitchell Silberberg & Knupp LLP

7

**COMPLAINT**

28.    To this end, the businesses of the Record Company Plaintiffs and Music Publisher Plaintiffs include producing, developing, marketing, promoting, distributing, selling, and/or licensing sound recordings and musical compositions to third parties for various kinds of uses, including for commercial use in posts on social media platforms.

29.    In part to further these lines of their respective business, Plaintiffs devote considerable effort and resources to: discovering and developing recording artists and songwriters; creating, advertising, promoting, selling, and licensing sound recordings embodying the performances of their exclusive recording artists including for use on social media; and developing, publishing, administering, and licensing their catalogs of musical compositions including for use on social media.

30.    Many recording artists and songwriters, including those with whom Plaintiffs work, are extremely selective about uses of their work in commercial advertising, or do not allow it at all. Licenses for the use of Plaintiffs' sound recordings and musical compositions for advertising or promotional purposes can be extremely valuable, since Plaintiffs are likewise selective regarding who they will license to, and will not grant such licenses to all who request one. Unauthorized use of Plaintiffs' works in advertising and marketing can thus have a significant impact on the overall value of those works and, moreover, can harm Plaintiffs' relationships with the recording artists and songwriters with whom they have contracted.

31.    Attached as Exhibit 1, and incorporated herein by reference, is an illustrative, non-exhaustive list of Recordings and Musical Compositions, of which the identified Plaintiff is an owner or exclusive licensee in the United States of rights under copyright, which rights have been infringed by Quince. Each listed work reflected in Exhibit 1 is registered with the United States Copyright Office or is exempt from the registration requirements of 17 U.S.C. § 411 under the terms of the Berne Convention. Each work is accompanied by the URLs of the Infringing Videos featuring the sound recording or musical composition posted and maintained

Mitchell
Silberberg &
Knupp LLP

8

**COMPLAINT**

by Quince on one or more of their owned or operated social media channels without Plaintiffs' authorization.

32. Plaintiffs' investigation is continuing, and discovery is likely to reveal additional infringements. Plaintiffs intend to seek leave to amend this Complaint at an appropriate time to provide an expanded list of works infringed by Quince.

**Quince's Infringement**

33. Quince is a direct-to-consumer start-up founded in 2018. Starting initially in fashion, Quince has since expanded to sell other products such as luggage and bedding.

34. Upon information and belief, Quince has found its success by "eliminating … 'middlemen'" usually used by traditional retailers and instead becoming the sole middleman between consumers and product manufacturers.[2]

35. From its inception, social media has been Quince's key advertising and promotional tool.

36. Indeed, Quince's "head of brand," who previously worked for the prominent music-streaming platform Spotify, specifically stated that "[b]ecause Quince isn't 'getting behind a logo or brand name,' it primarily relies on influencers and creators to spread the word about its clothes and bedding" and that the company works with about 300 creators a month.[3]

37. In reporting on Quince's recent $4.5 billion valuation, myriad articles stress that Quince "has seen its popularity surge in recent years, thanks in part to going viral on Instagram and Tik Tok"; "gained prominence on platforms like Instagram and TikTok"; and has "near-endless attention on social media."[4] Indeed,

[2] https://www.forbes.com/sites/simonmainwaring/2021/12/20/purpose-at-work-how-online-dtc-retailer-quince-profits-from-a-more-circular-economy/ (last visited March 18, 2026).

[3] https://www.modernretail.co/marketing/antonieta-moreland-quince-modern-retail-vanguard-2024/#:~:text=Because%20Quince%20isn't%20%E2%80%9Cgetting,six%20months%2C%E2%80%9D%20Moreland%20says (last visited March 18, 2026).

[4] https://news.crunchbase.com/e-commerce/iconiq-investment-doubles-quince-valuation/ (last visited March 18, 2026); https://us.fashionnetwork.com/news/Viral-brand-quince-raises-200-
(…continued)

Mitchell Silberberg & Knupp LLP

Quince's PR company touted that "[t]hrough strategic product seeding to editors, influencers, and stylists, [it] secured media placements" that garnered over 2 billion impressions.[5]

38.    By its own admission, Quince thus devotes and has devoted substantial resources to their social media advertising and promotional efforts, including partnerships with social media influencers.

39.    As part of their online advertising efforts, upon information and belief, Quince has garnered millions of followers on their own social media accounts and have collaborated with hundreds (if not thousands) of influencers and creators who similarly have audiences in the thousands. For example, Quince's "onequince" Instagram account alone has *1 million* followers.

40.    Quince also furthered its global brand awareness through the broad dissemination of the Infringing Videos on social media. It also recognizes the importance of music in its advertising. For example, it engaged an influencer for a paid partnership to promote four garments on her account, but when Quince reposted the same video on its own social media account, it made only one substantive change: replacing the music with one of Plaintiffs' works.[6]

41.    Quince, through both its own accounts and its partnerships with social media influencers, has created and disseminated hundreds of Infringing Videos with popular music at the forefront.

---

million-hits-4-5-billion-valuation,1753193.html (last visited March 18, 2026); https://www.emarketer.com/content/quince-more-than-doubles-valuation-dupe-culture-drives-demand (last visited March 18, 2026); *see also* https://www.businessoffashion.com/news/direct-to-consumer/quince-200-million-funding-round-double-value-viral/ ("Quince, the affordable luxury brand that's gone viral on Instagram and TikTok, is raising about $200 million in a new funding round that values the company at more than $4.5 billion, according to people familiar with the deal") (last visited March 18, 2026).

[5] https://www.5wpr.com/practice/quince.cfm (last visited March 18, 2026).

[6] *Compare* https://www.tiktok.com/@annejelicadenise/video/7483152889787976990 (last visited March 18, 2026) *with* https://www.tiktok.com/@onequince/video/7488161558527282474 (last visited March 18, 2026).

Mitchell Silberberg & Knupp LLP

10

**COMPLAINT**

42. These videos synchronize audio tracks of popular commercially available sound recordings and musical compositions, including Plaintiff's Recordings and Musical Compositions, with visuals of influencers showcasing Quince's products.

43. The audio tracks generally feature throughout the entirety of the Infringing Videos, and regularly include the most recognizable portions of musical works, such as the chorus or hook.

44. Upon information and belief, Quince through its professional staff is directly involved in creating, reproducing, and/or distributing the Infringing Videos. This involvement includes (1) creating, commissioning, reviewing, and selecting creative elements for use in the Infringing Videos on social media; (2) directly working with and overseeing social media influencers with whom Quince partners, including by providing advice and direction as to the content of the promotional videos in the form of "briefs"; (3) specifically encouraging social media influencers to create video content and feature Quince's products in their videos; and (4) actively reviewing influencer-made videos then promoting and/or redistributing the videos by posting them on Quince's own social media pages.

45. Indeed, Quince has recently sought a "Creative Strategy Director" whose job responsibilities include: "[d]evelop[ing] and execut[ing] creative strategies that drive performance across paid social platforms — primarily optimizing for acquisition and revenue growth"; "[s]tay[ing] on top of design and social media trends to bring fresh, innovative ideas to campaigns"; and "[c]ollaborating with the Influencer team to craft and refine briefs for [user generated content] and testimonial video content."[7]

46. "Social media trends" encompass the use of "trending audio," *i.e.*, music or sounds which have gained popularity on a social media platform through

[7] https://www.linkedin.com/jobs/view/creative-strategy-director-at-quince-4322173140 (last visited March 18, 2026).

Mitchell Silberberg & Knupp LLP

frequent use.[8] Many commentators have highlighted the importance of music in advertising[9] and explained the importance of "trending audio" specifically: "Trending audio is trending for a reason — because it's popular and likeable. Therefore, adding a well-loved sound or song to your content makes it stand out more, which helps increase your reach. Not only that, but if a sound is popular, it's also more recognizable and familiar – which also helps with engagement."[10] Furthermore, "[s]ome platforms may be inclined to prioritize content that makes use of trending audio, so the algorithm might serve your audio-enhanced posts to a broader audience beyond your usual followers" and "[a]dding trending audio also makes your content more discoverable by those who want to browse similar content with the same audio."[11]

47.    Thus, on information and belief, Quince encourages its influencers, through the briefs, guidelines and other guidance it provides, to track social media trends to ensure maximum reach and engagement of the content promoting Quince's products, specifically including the use of trending audio, encompassing popular music like Plaintiffs' works (which Quince knows is unlicensed for commercial use).

48.    Quince also recently sought, and apparently hired, a "Brand Partnership & Influencer Outreach Senior Associate" to "[m]anage all outreach and communication to prospective talent, providing creative direction and guidance to creators to ensure that UGC content effectively communicates our brand identity and resonates with our audience"; "[p]rovide guidance and support throughout the

---

[8] https://pmcmediagroup.com/how-to-find-trending-audio-for-your-reels-2/ (last visited March 27, 2026).

[9] *See* https://juniperpublishers.com/pbsij/PBSIJ.MS.ID.556081.php (last visited March 27, 2026).

[10] https://www.adobe.com/express/learn/blog/trending-audio-social-media-content (last visited March 27, 2026).

[11] *Id.*; *see also* https://www.precisionsocial.com/blog/why-you-should-use-trending-music-in-your-posts (last visited March 27, 2026); https://www.superfectamanagement.com/blog/importance-of-using-trending-audio (last visited March 27, 2026).

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

content creation process, including setting clear timelines, deliverables, and expectations"; and "[r]eview and organize all footage and then send to respective teams for approval (consolidating our internal team's feedback to then share with talent or agent so reshoots are clear)."[12] These job responsibilities indicate Quince maintains a high level of creative control and input on the specific aspects of the videos promoting its products created by collaborators and influencers, which include certain of the Infringing Videos.

49.   Upon information and belief, Quince maintains access to and/or tracks the posting and delivery of social media and other digital media materials throughout the company, including the Infringing Videos distributed through Quince's own account and by its influencer partners.

50.   Upon information and belief, in exchange for creating and distributing promotional videos, Quince provides its social media influencers, creators, and partners with monetary compensation, either directly or through commissions, free products, and/or rebates (though, upon information and belief, despite Federal Trade Commission guidelines, the social media influencers often do not disclose that they receive compensation in any form from Quince). Upon further information and belief, Quince enters into comprehensive contracts with many leading social media influencers, including the influencers who are featured in, created, and/or distributed the Infringing Videos.

51.   Despite its emphasis on social media and touted savvy in this area, including its "head of brand" prominently listing her former position at Spotify, Quince has brazenly used Plaintiffs' music without authorization in its advertising. Plaintiffs discovered numerous instances of unauthorized use of musical works by Quince and its influencer partners.

---

[12] https://builtin.com/job/brand-partnership-influencer-outreach-senior-associate/3796275 (last visited March 26, 2026).

52.    Having uncovered this rampant infringement, on September 6, 2024, Plaintiffs sent a demand letter to Quince putting it on notice of its illicit conduct, including providing a demonstrative list of posts that included Plaintiffs' works without authorization. Plaintiffs received no response for over a month, and followed up with Quince in October 2024.

53.    On November 4, 2024, Quince, through counsel, finally responded, stating, *inter alia*, that "Quince believes that it has fully addressed the copyright concerns raised in [Plaintiffs'] August 20, 2024 letter."

54.    Plaintiffs advised that this response was insufficient, but Plaintiffs again received no response.

55.    Later, Plaintiffs discovered that Quince's representations were false. In or around April 2025, employees of Plaintiffs independently discovered more unauthorized uses of Plaintiffs' works on Quince's own social media account. As a result, Plaintiffs conducted further investigation which revealed not only new infringing uses of Plaintiffs' works, but also that uses that existed prior to September 6, 2024 remained online, contrary to Quince's representations.

56.    Some examples of Quince's infringement include the following:

a) **Figure 1** below is a screen capture of a video created by or at the direction of Quince and posted on Quince's "onequince" Instagram account in January 2024 promoting "professional-grade cookware" featuring the copyrighted work "A Sunday Kind of Love" popularized by Etta James.

Mitchell
Silberberg &
Knupp LLP

14

**COMPLAINT**



**Figure 1**

b) **Figure 2** below is a screen capture of a video created by or at the direction of Quince posted on Quince's "onequince" Instagram account in April 2024 promoting a "Carry-On Hard Shell Suitcase" featuring the copyrighted work "Espresso (Double Shot Version)" popularized by Sabrina Carpenter.

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP



**Figure 2**

c) **Figure 3** below is a screen capture of a video created by or at the direction of Quince posted on Quince's "onequince" TikTok account in March 2024 promoting Quince's products described as the "dreamiest bedding bundle" featuring the copyrighted work "Dreams" popularized by Fleetwood Mac.

Mitchell
Silberg &
Knupp LLP



**Figure 3**

d) **Figure 4** below is a screen capture of a video featuring social media influencer "gabbycrays" created by or at the direction of Quince and posted on Quince's "onequince" TikTok account in April 2025

17

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

promoting a "Mongolian Cashmere Oversized Crewneck Sweater" featuring the copyrighted work "Gimme More" popularized by Britney Spears.



**Figure 4**

**COMPLAINT**

Mitchell Silberberg & Knupp LLP

e) **Figure 5** below is a screen capture of a video featuring social media influencer "Sydnie" created by or at the direction of Quince and posted on Quince's "onequince" TikTok account in May 2023 promoting a "100% European Linen Blazer" featuring the copyrighted work "Oogum Boogum" popularized by Brenton Wood.



**Figure 5**

57. Quince had no authorization from Plaintiffs to use any of the works in the Infringing Videos identified in Figures 1-5 or listed in Exhibit 1.

**COMPLAINT**

Mitchell Silberberg & Knupp LLP

58.    Recognizing the importance of music to their social media presence and brand, Quince's posts often identify the musical works featured in the Infringing Videos (such as in **Figure 1** above, which lists audio in the caption as "Etta James · A Sunday Kind Of Love") or explicitly center their advertising campaigns around Plaintiffs' copyrighted music (such as in **Figure 3** above in which Quince promotes its bedding products around the theme of "dreams" while exploiting Fleetwood Mac's song "Dreams").

59.    Other of the Infringing Videos purport to contain "Original Audio" – notwithstanding the clear use of Plaintiffs' music. The domination of "Original Audio" shows that Quince itself directly copied Plaintiffs' music, as "Original Audio" is defined by social media platforms as audio created by the user. Such platforms also recognize, however, that users can and do erroneously (or intentionally) upload and label copyrighted music they have no permission to use as "Original Audio".[13]

60.    Courts specifically have held that the same type of conduct engaged in by Quince constitutes copyright infringement. For example, on September 15, 2022, United States District Judge William P. Dimitrouleas granted partial summary judgment to another music company, Sony Music Entertainment, in its action against Bang Energy.[14]  In its order, the court found that it was "undisputed that Defendants directly posted approximately 286 social media videos utilizing portions of Plaintiffs' copyrighted works, works neither Defendants nor the social media platforms were authorized to use for commercial purposes," and concluded that the Bang Defendants were liable for direct copyright infringement as a matter of law.[15]

---

[13] *See, e.g.*, https://help.instagram.com/329208821595430 (last visited March 18, 2026); https://support.tiktok.com/en/log-in-troubleshoot/troubleshooting/a-sound-was-removed-from-my-video (last visited March 18, 2026).

[14] *Sony*, 2022 WL 4771858, at *7-13.

[15] *Id.* at * 7.

Mitchell
Silberberg &
Knupp LLP

**COMPLAINT**

61. The social media platforms specifically highlighted as the reason for Quince's success and on which Quince has posted the Infringing Videos expressly state that account holders have no right to use music without proper authorization, and in particular, that music cannot be used in connection with commercial activities. Until recently, the TikTok Terms of Service unequivocally stated that no rights are granted respecting use of sound recordings and musical compositions:

> NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE.

62. The TikTok Music Terms of Service now state that "Except as expressly set out in these Music Terms, you acknowledge that no rights in the music—either in the sound recordings or the underlying compositions embodied in them—are licensed to you under the TikTok Terms of Service or these Music Terms." These Terms of Service go on to state: "Unless you've selected a sound from our list of Commercial Sounds, music should only be used for personal, non-commercial purposes. Any other use of music to sponsor, promote, co-brand or advertise or in a way that creates an association between the music and a brand, product, good or service is prohibited unless you have obtained separate permissions and all necessary rights."[16] To Plaintiffs' knowledge, none of the Sound Recordings and Compositions at issue are among the "list of Commercial Sounds" referenced by the Terms of Service.

63. Similarly, the Instagram Terms of Use incorporate "Music Guidelines," which are maintained in the "Legal" section of the Facebook website. Those Music Guidelines expressly provide as follows: "Use of music for commercial or non-

---

[16] *Terms of Service*, TikTok, https://www.tiktok.com/legal/page/global/music-terms-us/en (last visited March 18, 2026).

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

personal purposes in particular is prohibited unless you have obtained appropriate licenses."[17]

64.    Upon information and belief, Quince, despite being aware of these terms, chose to ignore them.

65.    Quince is a sophisticated company that, upon information and belief, has knowledge of intellectual property and licensing, including with respect to copyrights.

66.    Thus, Quince's infringement was and is willful. Quince knew or should have known it was required to license Plaintiffs' Recordings and Musical Compositions. And Quince continued (and continues) to improperly exploit Plaintiffs' musical works even after receiving express notice of infringement.

67.    Having attempted to address this matter short of litigation and being rebuffed, Plaintiffs have no choice but to bring this suit to remedy the harm done by Quince's rampant and brazen infringement, which continues to this day. Indeed, in March 2026 alone, Quince made at least seven more infringing posts exploiting significant, commercially valuable works owned or controlled by Plaintiffs, including "So Easy (To Fall In Love)" popularized by Olivia Dean, "Daisies" popularized by Justin Bieber, and "Lush Life" popularized by Zara Larsson.

**COUNT I**

**COPYRIGHT INFRINGEMENT**

**[By The Record Company Plaintiffs Against Defendants]**

68.    Plaintiffs incorporate paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.    Defendants' creation, posting/reposting, and/or streaming of the Infringing Videos infringe Plaintiffs' copyrights. Among other things, Defendants

---

[17] *Terms of Use*, Instagram, http://help.instagram.com/581066165581870 (incorporating Music Guidelines) (last visited March 18, 2026); *Music Guidelines*, Facebook, https://www.facebook.com/legal/music_guidelines (last visited March 18, 2026).

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

have unlawfully reproduced, prepared derivative works from, distributed, and/or publicly performed by means of a digital audio transmission, the Recordings listed on Exhibit 1 without authorization, in violation of 17 U.S.C. §§ 106(1), (2), (3) and (6), and 17 U.S.C. § 501.

70. Defendants' acts of infringement have been knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

71. Thus, because Defendants directly posted the Infringing Videos utilizing exact copies of portions of Plaintiffs' copyrighted works without authorization from Plaintiffs, Defendants are liable for direct copyright infringement. *See Sony*, 2022 WL 4771858, at *8 ("it is undisputed that Defendants directly posted approximately 286 social media videos utilizing portions of Plaintiffs' copyrighted works [without authorization] . . . Courts have found that the unauthorized reproduction, distribution and public performance of sound recordings via the internet violates the Copyright Act . . . Both elements of a direct copyright infringement claim having been established based upon the undisputed material facts . . . Plaintiffs are entitled to partial summary judgment against Defendants").

72. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each Recording infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

73. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

74. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law.

Mitchell
Silberberg &
Knupp LLP

23

**COMPLAINT**

Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT II

## COPYRIGHT INFRINGEMENT

### [By The Music Publisher Plaintiffs Against Defendants]

75.    Plaintiffs incorporate paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.    Defendants' creation, posting/reposting, and/or streaming of the Infringing Videos infringe Plaintiffs' copyrights. Among other things, Defendants have unlawfully reproduced, prepared derivative works from, distributed, publicly performed, and/or publicly performed by means of a digital audio transmission, the copyrighted Musical Compositions listed on Exhibit 1 without authorization, in violation of 17 U.S.C. § 106(1), (2), (3) and (4).

77.    Defendants' acts of infringement have been knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

78.    Thus, because Defendants directly posted the Infringing Videos utilizing exact copies of portions of Plaintiffs' copyrighted works without authorization from Plaintiffs, Defendants are liable for direct copyright infringement. *See UMG Recordings, Inc. v. Vital Pharms*., Inc., No. 21-CV-60914-CIV, 2022 WL 2670339, at *6 (S.D. Fla. July 11, 2022) (granting summary judgment based on use of sound recordings and compositions in social media posts).

79.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each Musical

Mitchell
Silberberg &
Knupp LLP

24

Composition infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

80.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

81.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT III

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

### [By All Plaintiffs Against Defendants]

82.    Plaintiffs incorporate paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.    As detailed above, the third-party social media influencers, creators, and partners who created and distributed the Infringing Videos have likewise infringed Plaintiffs' copyrights, and Defendants are liable as a contributory copyright infringer for the infringing acts of these influencers. Additionally, or alternatively, Defendants are liable as contributory copyright infringers by making the Infringing Videos available to the users and subscribers of the social media platforms referenced above.

84.    By encouraging, promoting, and/or assisting with the creation of the Infringing Videos and/or by causing them to be copied, made available, and transmitted over the social media platforms referenced above, Defendants materially contributed to the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in the Infringing Videos, including but not limited to the Recordings and Musical

Mitchell
Silberberg &
Knupp LLP

25

COMPLAINT

Compositions listed in Exhibit 1. Defendants have actual and constructive knowledge of such infringement (for example, by way of Plaintiffs' ignored September 2024 letter), including actual or constructive knowledge that no Plaintiff has granted the rights to include Plaintiffs' copyrighted Recordings and/or Musical Compositions in the Infringing Videos.

85.    In addition, Defendants have induced such infringement, including by promoting such infringement through the compensation paid to social media collaborators and other social media influencers for creation and distribution of the Infringing Videos, encouraging such collaborators and influencers to use certain creative elements and social media trends in the Infringing Videos, posting and/or reposting the Infringing Videos, and specifically referring to the Recordings and Musical Compositions used in the Infringing Videos. For example, Quince's employees specifically "provid[e] creative direction and guidance to creators," "review user-generated content submissions, ensuring that content is brand-right, on-message, and meets quality standards and requirement" including mandating "reshoots" of the content, and "drive engagement" to such content.[18] Defendants thus encouraged these collaborators and influencers to create the Infringing Videos (apparently maintaining creative control over their creation) and also promoted, marketed, and intended to promote such videos.

86.    Defendants further induce their collaborators' and influencers' infringement by encouraging these individuals to track and capitalize on social media trends which, on information and belief, includes "trending audio" (often encompassing Plaintiffs' works) that Defendants knew was not licensed for promotional uses, in order to trigger platform algorithms to serve content to a broader audience, boost reach, and increase visibility, directly benefitting Defendants.

---

[18] https://builtin.com/job/brand-partnership-influencer-outreach-senior-associate/3796275 (last visited March 26, 2026).

**COMPLAINT**

87. Defendants' acts of contributory infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

88. As a direct and proximate result of Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

89. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

90. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright.

**COUNT IV**

**VICARIOUS COPYRIGHT INFRINGEMENT**

**[By All Plaintiffs Against Defendants]**

91. Plaintiffs incorporate paragraphs 1 through 85 of this Complaint as if fully set forth herein.

92. As detailed above, third-party social media influencers, creators, and partners who created and distributed the Infringing Videos have likewise infringed Plaintiffs' copyrights, and Defendants are vicariously liable for the infringing acts of these individuals. Additionally, or alternatively, Defendants are liable as a vicarious

Mitchell
Silberberg &
Knupp LLP

27

**COMPLAINT**

copyright infringer by making the Infringing Videos available to the users and subscribers of the social media platforms referenced above.

93.     Defendants have exercised the right, ability, and authority to control and supervise the placement of the Infringing Videos on the social media platforms referenced above. Defendants also have the ability to remove the Infringing Videos from each platform. Defendants receive a direct financial benefit from the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in the Infringing Videos, including but not limited to the works listed in Exhibit 1, including (among other financial benefits) increased brand recognition and product sales.

94.     Defendants' acts of vicarious infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

95.     Thus, because Defendants had the ability to control, supervise, and remove the Infringing Videos posted by third parties, and they received a direct financial benefit from the distribution and/or public performance of the copyrighted works contained in the Infringing Videos, Defendants are liable for vicarious copyright infringement.

96.     As a direct and proximate result of Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

97.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

98.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully

Mitchell
Silberberg &
Knupp LLP

28

**COMPLAINT**

compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)　for a permanent injunction requiring that Defendants, and their officers, agents, employees, attorneys, and others in active concert or participation with each or any of them, cease infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created;

(b)　for Plaintiffs' actual damages and Defendants' profits from infringement, pursuant to 17 U.S.C. § 504(b), in amounts to be proven at trial, or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), for statutory damages up to the maximum amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c);

(c)　for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5) and otherwise;

(d)　for pre-judgment and post-judgment interest; and

(e)　for such other and further relief as the Court may deem just and proper.

Mitchell
Silberberg &
Knupp LLP

**COMPLAINT**

DATED: April 16, 2026

RESPECTFULLY SUBMITTED,

MITCHELL SILBERBERG & KNUPP LLP
DAVID A. STEINBERG
BRADLEY J. MULLINS
ANDREW NIETES

By: */s/ Bradley J. Mullins*
David A. Steinberg
Bradley J. Mullins
Andrew Nietes
Attorneys for UMG Recordings, Inc.; Capitol Records, LLC; Universal Music Corp.; PolyGram Publishing, Inc.; Songs of Universal, Inc.; Universal Music – MGB NA LLC; Universal Music – Z Tunes LLC; Universal Music Publishing, Inc.; Concord Music Group, Inc.

Mitchell
Silberberg &
Knupp LLP

30

**COMPLAINT**